My name is Robert Gibbs for Appellant Igor Derevov. In this case, the immigration judge's adjustment denial must be reversed because it failed to afford full faith and credit to the state court decisions and because it was contrary to Ninth Circuit law that a non-bonafide marital intent on the part of the citizen does not establish a fraudulent intent by the immigrant. These legal errors necessarily infected the adjustment decision-making since by BIA case law, adjustment is presumed in a spouse case unless there is a negative factor, in which case there must be sufficient positive equities to outweigh the negative. This court recently held in Hernandez that reliance on the non-viability of a marriage was improper and reversed the adjustment denial. Here, Derevov had strongly positive factors. He had a good work history and strong support in the small Whidbey Island community, with letters of support from Joel Connolly, a PI reporter, his partner Michelle Pailthorpe, Paul Fournier, and a petition signed by several hundred people that are in the administrative and the excerpts of record. Mr. Gibbs, in figuring out how to consider that evidence and other, to figure out if we have jurisdiction here, am I correct that his situation is that he was denied discretionary adjustment of status? Yes. He was a fiancé adjustment. You know, there was a several-year history of courtship. Ms. Sawyer petitioned him in as a fiancé after a long period, and he came in, and then the next step is one applies for adjustment of status. He did and was applied at the district because there had been this initial conviction for assault four as a result of the first dispute they had on their day of marriage, or planned day of marriage, and then it went into the immigration judge, the service, that charge, the criminal charge was pled down to a disorderly conduct, and the judge denied based on discretion. But he found also that there was a bona fide marriage, even though the service hadn't alleged that as a ground of removability. Right. So that's my question, is he is there not under the same provision that the Nakamoto individual was? That was a different section. If I remember, Nakamoto, that was also an adjustment case, wasn't it? It was, but under a different section. So it seems to me it's not really, you know, it's not the bona fide marriage issue. So it seems to me that what you have here is a different section than Nakamoto and that the essence of his decision, the statute or the section under which he was held apportable was purely discretionary, even though they had this add-on. I understand what your question is. It's not quite right, though, because to adjust status under Section 245, which is this case, one of the initial provisions of eligibility for 245 adjustment is the person must be otherwise admissible. And fraud or marriage fraud in this case would be a basis to find that the person was not otherwise admissible and therefore ineligible. So that's a statutory eligibility requirement for adjustment. The judge, that was the first sentence in the judge's conclusion. This was not a bona fide marriage and that would have made him ineligible to adjust status as a matter of statutory construction. The judge found as a discretionary matter that he didn't merit the exercise of discretion based on this, his view that there was a history of spousal abuse. The, there were only three incidents that were described before the court, all of which were documented by state court papers and or police reports. In two of those, the courts found there wasn't evidence in support of that. One, there was a disorderly conduct conviction. That was the first incident that was actually provoked by Ms. Sawyer. This was on their, their wedding day or planned wedding day of February 25th. And this is the police report at ER 109. And the last sentence here from the officer says, Detective Bright advised that the victim told him she threw a three ounce glass at, I can't quite make it out, prior to him throwing a glass at her. So that's how the, this thing started. She was, started, she provoked an argument with him and then he flipped the glass across there that inadvertently caught her and, and caused a flush room which required no medical attention. Other than that, there was one other matter where she had called the police, got an initial protection order. When she went to court to try to get that extended, the court made a finding that there was no evidence or insufficient evidence of domestic violence in that situation. The third incident, the police officer came out and prepared a report after Mr. Darabont had left, when she kicked him out of the house when he returned with some alcohol, having been a little drunk, I guess. And the police officer wrote on the report, no crime was committed. Those are the exact three incidents that are testified to. The sum of the incidents that are testified to by Ms. Sawyer. What do we have to determine in order to grant relief in this case? Well, in my view, the court would have to determine that the, the finding of bona fide marriage was not supported by the law because the, the, the court would have to determine that the evidence there was not substantial. It didn't support the, such a finding. It was based on, solely really on her testimony about her intent. And the Nakamoto case makes, the marriage fraud case of recent vintage, makes very clear that the fraudulent intent on the part of the citizen isn't imputed, therefore, to the, to the immigrant. That would be sufficient or, and, or that the, on the discretionary factor, that the court or the immigration judge failed to accord full faith and credit to the decisions of the State court. If those are taken off the, of the balance that's made, then the balance is inevitably going to be different. The court, the immigration judge lacks the authority to ignore or fail to provide full faith and credit to these decisions. It's argued that that was not provided. I don't think I said I wanted to reserve a couple of minutes. It looks like I have maybe one more minute here, so. You can reserve it if you'd like. Yeah, I think I'll just reserve it at this point and we'll see what the government has to say. Okay. Thank you, Your Honor. Thank you. Thank you for your argument. Mr. O'Connor, you're up again. Which branch of the service? I'm an Army Reservist, Your Honor. May it please the Court again, I am Larry O'Connor, representing the Attorney General on this matter. Your Honor, as the government renews its motion to dismiss this case for lack of jurisdiction because this petitioner is seeking review of the immigration judge's denial of an adjustment application solely in the exercise of administrative discretion. Now, unlike the situation this Court was faced with in the Nakamoto decision, there the Court was faced with whether or not a finding of removability under the marriage fraud statute could be sustained. Clearly, that's not the situation in this case. In fact, this immigration judge specifically held that he was withholding judgment on the question of whether petitioner induced Ms. Sawyer to file a fiancé petition on his behalf for fraudulent grounds. The approach you've taken on reviewability in sort of similar cases, and this is a different one, but generally has been that we have the jurisdiction to determine eligibility for the exercise of discretionary relief. We would not have jurisdiction over the ultimate decision. And jurisdiction if there are colorable due process challenges. Would you agree with that? Yes, Your Honor. So, how does that play out in this statute on eligibility? If the immigration judge made a factual finding that was incorrect, we would have the jurisdiction to review that before he reached the ultimate decision of that? Your Honor, I'd agree with you if it's clear that an IJ denied relief on a statutory eligibility ground. The analogous situation might be if you're talking about eligibility for relief, either cancellation or removal, and you're talking about the period of time spent in the United States. So, how does that play out here? Okay, well, I respectfully disagree with my opposing counsel's interpretation. This immigration judge did not deny relief on statutory eligibility grounds. Two grounds on which he must be eligible for adjustment of status at the time he filed his application. He must be admissible in the United States, which he was. He was never charged with marriage fraud, procuring a visa through marriage fraud. That was not a charge of inadmissibility at the time he filed his application. And number two, he did have a visa available to him at the time he filed his application because Ms. Sawyer's fiancé visa petition had been approved. Therefore, he was statutory eligible for adjustment of status. His application was solely denied in the express words of the immigration judge at the end of his decision. It was solely denied in the exercise of administrative discretion. This judge weighed several of the adverse factors against the positive factors. He specifically noted petitioners, testimony petitioners' witnesses, and the people who signed the petition, that obviously he was an individual who had made a favorable impression on many of the members of his small community. The judge noted that. He found that that was outweighed by the significant adverse factors in this case, being the conviction for disorderly conduct resulting from the incident when he threw the coffee mug at Ms. Sawyer, causing a gash in her forehead. The history, other history indications of abusing Ms. Sawyer. I think the difficulty comes that he mentions the sham, or as I think he calls it, not a bona fide marriage. He mentions that, and then he goes on to say, in fact, he's not, he doesn't agree with the premise that one cannot obtain adjustment of status for a non-viable marriage. So he talks about the marriage, but then I read it that he folded it into the waiver decision. On the other hand, Mr. Gibbs reads it as if he made that finding preliminary to the waiver. Do you see the difference? Yes, Your Honor. Again, I would concede it is somewhat confusing, because he starts off his analysis saying that he does not find that the marriage was entered into on a bona fide basis. But then clearly when he goes on from that standpoint, he's considering the, he's considering as adverse factors the factual elements that caused him to lead off his decision with that statement. It was not denied on statutory eligibility grounds. It was denied because of the several adverse factors that caused him to say that I don't believe this is a bona fide marriage. They are more, they outweigh the positive equities in this petitioner's case. Now, again, I also respectfully take opposition to opposing counsel's opinion that this judge erred by solely finding that there was no bona fide marriage because of Ms. Sawyer's intent. If you look at his decision, he clearly considered circumstantial evidence that the petitioner himself perhaps did not have a good faith basis of entering into the marriage, specifically Ms. Sawyer's testimony that he promised her that if she agreed to still marry him after the two February altercations of 1998 that he would provide her financial assistance and try to make things better until they can get a divorce. Now, if he's stating that before they get married, clearly that is circumstantial evidence and intent on his part that he didn't believe the marriage was going to be in good faith. They're just going to bide their time trying to paint the picture of the happy couple until the two years can pass and he can get the conditions on residence removed and then adjust status. So it certainly wasn't a determination based solely on Ms. Sawyer's intent. Obviously, her intent was important in that she testified that the reason that she continued on with the marriage, even despite all the troubles they had had after he came to the United States from Russia, was that she thought that she might be criminally responsible herself if she didn't proceed to go through with the marriage based on the fact that she had petitioned an affidavit of good cause on his behalf in order to detain the fiancé petition. Again, the government's position is that this court does not need to review that initial statement of the immigration judge that this marriage is not entered into on a good faith basis in finding that a lapse of jurisdiction in this case. But even assuming that it did decide that that was necessary to review that in order to resolve this case, we would point out that that is clearly based on substantial evidence. Ms. Sawyer testified that on the initial day of their wedding, they were supposed to get married on February 25, 1998. When she came home that day, when they were getting ready to go to the marriage ceremony, she discovered the petitioner on the computer researching ways that he could legalize the status without having to go through with the marriage. Obviously, that was in contradiction to his testimony because he had testified initially that he was pressing the suit, was all happy to get married, and she came home having second doubts. Now, after she testified and he took the stand in rebuttal, his testimony changed. While it may have been on the computer, he testified researching plane tickets to Russia or things of that nature. He was no longer pressing the suit. His testimony simply was not credible. Furthermore, we would point out that it's significant that both Ms. Sawyer and petitioner got the date of their wedding wrong on their testimony under direct examination. They both testified they were married on March 5, 1998. The marriage certificate is very clear that they were married on March 9, 1998. Now, this is not dispositive of the good faith marriage finding, but obviously it's kind of suggestive evidence that the wedding obviously didn't make that much of an impression on them if they can't even remember the exact day that they got married. I don't know. Forgetting an anniversary. I have to write this in my husband's date book just to make sure he doesn't forget. He has 20 years left. It's a short memory of that time. Understood, Your Honor. But as you said, it's not dispositive. And again, the petitioner points out also he takes the fact that there was clear error by the immigration judge because he was predisposed to accept Ms. Sawyer's testimony. Now, he bases this on a comment that the immigration judge made prior to any evidence being taken that he wanted Ms. Sawyer to be present. He wanted the parties to attempt to get Ms. Sawyer so she could testify, and he made a comment that he was going to give deference to her testimony. Now, again, petitioner would like to extrapolate this comment as a clear indication of judicial impropriety that he was going to solely discredit petitioner's testimony and only believe Ms. Sawyer's. Again, this immigration judge went out of his way to give both parties deference in presenting a full and complete case. There's over 300 pages of transcribed testimony on the issue of their marriage. There are several continuances by the immigration judge to allow additional testimony to be taken. It's simply not believable that a comment he made regarding him wanting to have the witness present was a clear predisposition that he was going to solely give her testimony credit. Again, Your Honors, barring any further questions, the government would reemphasize that because this individual was denied adjustment of status on statutory eligibility grounds, but solely in the words of the immigration judge in the exercise of administrative discretion, this court lapsed jurisdiction to review that decision under 8 U.S.C. 1252A2B. Okay, thank you for your argument. We'll hear rebuttal at this time. Just a couple of points. One of the points the counsel made was that the immigration judge had specifically withheld any finding that Darabov had induced her to file the K1 I-129 application, and saying that therefore there was no finding of a non-bondified marriage. Well, those are really apples and oranges. The fiancé petition is before the marriage has happened, so of course, it doesn't reach the question of whether the judge ruled on the bona fides of the marriage. As to counsel's statement that because he had never been charged with marriage fraud, that showed that the judge wasn't ruling on inadmissibility, that's really also apples and oranges. Inadmissibility is under Section 212 of the INA. Grounds of removability are under Section 237. For purposes of adjustment, one has to show that you're otherwise admissible, as counsel mentioned. That means it incorporates by reference all of the grounds of inadmissibility under 212. But was there anything in the record where it was argued that he didn't meet those requirements? I don't believe there was any specific reference in the record. And the service never argued that he didn't meet the underlying requirements? No, they never argued that, nor did they ever argue marriage fraud or non-bondified So you were there on a waiver based on discretion? Well, it wasn't really a waiver. It was an adjustment application. It's not a waiver application. It's an adjustment application, which is not a discretionary. But it's a discretionary adjustment. I guess maybe that makes sense. Yes, it's discretionary. But the important thing, the Board, yes, it's discretionary. But if you read the Board's case law that we cite in the brief, it's crystal clear. The Board says that adjustment status in a spouse case is presumptively granted. And it's only if there are some negative factors. And then only if the positive factors are insufficient to outweigh the negative factors. In this case, because the negative factors we don't see as very substantial in light of the State court decisions and the police reports, we think that the positive factors clearly outweigh it. And if you took off these improper negative factors that were stuck on the scale, you couldn't come up with this kind of conclusion. As to what counsel said about the judge relying on circumstantial evidence about looking at the computer or that sort of thing, I don't believe that was what the testimony was. He understandably did admit that he was looking at the computer when she came home. That was their marriage date. But they've been sort of arguing in the days running up to that. And she was obviously demonstrating she had cold feet. He was looking at, well, Jesus, there's something else I can do here. And I don't think that's indicative of some bona fide or lack of bona fides on his part if he's looking for some other options. He's torn up, he's pulled up his life, pulled up all his stakes there based on her application for him to come over here and settle. And he's pulled up and come here. And then all of a sudden once he gets here and within weeks she's got cold feet and has decided, well, maybe he's not the guy for me. That's all I have. Thank you very much. Thank you for your argument, counsel. Thank both counsel for their arguments. The case just argued will be submitted for decision and the court will stand adjourned for the week. All rise. This court for the sentence and the jury. Thank you.
judges: Hawkins, Thomas, McKeown